IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KEVIN D. LOGGINS, SR.,

    Plaintiff,

v.

REBECCA L. PILSHAW, et al.,

    Defendants.

Case No. 18-3254-DDC

# MEMORANDUM AND ORDER

Pro se plaintiff Kevin D. Loggins, Sr., a Hutchinson Correctional Facility prisoner, brings the following motions before the court as part of his 42 U.S.C. § 1983 claim: Motion to Change Venue (Doc. 4); Motion for TRO and Preliminary Injunctions (Doc. 6); Motion for Hearing (Doc. 13); Motions to Consolidate Cases (Docs. 14, 16, 17); and Motion for Leave to Amend Complaint (Doc. 18). For the reasons discussed below, the court grants plaintiff's Motion for Leave to Amend Complaint and denies the rest of his motions.

Plaintiff may file an Amended Complaint, but it must address the deficiencies identified by the court. For example, plaintiff should identify whether he asks for relief besides an order releasing him from confinement. If plaintiff seeks such relief, he must identify it precisely and explicitly. Also, plaintiff has sued 38 defendants. Upon screening, many defendants appear to be immune from suit. So, plaintiff's Amended Complaint must plead facts sufficient to show why these immunities do not bar his claims against those defendants. Last, plaintiff brings state law and criminal claims under § 1983. But, plaintiff's Amended Complaint must address the court's conclusion that § 1983 is an improper vehicle for these claims. In sum, plaintiff may file an Amended Complaint, but it must address the deficiencies identified in this Order.

**I.    Facts**

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983 and has paid the filing fee. Doc. 1. Plaintiff is a prisoner at the Hutchinson Correctional Facility in Hutchinson, Kansas. Plaintiff alleges that he was incarcerated wrongfully because of errors committed in his underlying criminal proceedings. Plaintiff names 38 defendants: multiple state court and federal judges; court reporters; an assistant district attorney; the Clerk of the Sedgwick County District Court; the Governor of the State of Kansas; Sedgwick County Commissioners; the Sedgwick County Counselor; Jeff Easter, Sedgwick County Sheriff; Joseph Norwood, Secretary of Corrections for KDOC; and the Clerk of the Kansas Court of Appeals.[1]

Plaintiff alleges that in November 1995, District Court Judge Rebecca L. Pilshaw presided over his state court criminal proceedings in Sedgwick County, Kansas, Case No. 95cr1859. Plaintiff alleges that, although the prosecution declined to add a charge of Aggravated Sexual Battery, Judge Pilshaw "abandon[ed] her color as a neutral, detached and impartial adjudicator and became an advocate and partisan for the prosecutor's case." Doc. 1 at 2. Plaintiff alleges that Judge Pilshaw stated on the record that she was interested in adding an Aggravated Sexual Assault charge against plaintiff and finding cause to bound him over on that charge. Later that same day, a hearing was held before Judge Clark Owens II. Assistant District Attorney David Kaufman and plaintiff's court-appointed attorney attended the hearing, but plaintiff alleges he did not attend. Judge Owens acknowledged that Judge Pilshaw added additional charges and stated that an amended complaint had been filed reflecting those charges. But, the amended complaint was not filed until 12 days after the hearing. Plaintiff argues that

---

[1]    Plaintiff's official capacity claims against Kansas Governor Jeff Coyler and KDOC Secretary Joseph Norwood are replaced with official capacity claims against current Kansas Governor Laura Kelly and interim KDOC Secretary Roger Werholtz. Fed. R. Civ. P. 25(d); Doc. 19.

2

despite Kan. Stat. Ann. § 22-3205's mandatory language requiring him to be physically present, the judge allowed counsel to waive plaintiff's right to fair notice and enter a plea on his behalf.

Plaintiff's case proceeded to trial, and he was convicted. Plaintiff alleges that Judge Pilshaw and her court reporter, Diana Nichols, "spoliated the record by tampering with it to alter it, conceal[ed] the content of Judge Pilshaw's advocacy for the state case, and withheld said contents from defendant's appellate counsel, and the defendant." Doc. 1 at 10. Plaintiff alleges that the spoliated portion of the record was not made available to plaintiff until September 13, 2003. Plaintiff also alleges that Judge Owen's court reporter, Lou Ann Hale, likewise withheld the arraignment transcript from defendant and his appellate counsel, and he did not receive his transcript in Case No. 95cr1859 until August 12, 2005, and his transcript in Case No. 95cr1616 until June 1, 2015. Plaintiff also alleges that Bernadine Lamberas, Clerk of the Sedgwick County District Court, withheld transcripts and that Douglas Shima, Clerk of the Kansas Court of Appeals, denied his motion that would have directed the District Court of Sedgwick County to produce those transcripts.

Plaintiff alleges that Sedgwick County Counselor Richard A. Euson advised or participated in creating a county policy that destroyed documents with evidentiary value. And, plaintiff alleges that four Sedgwick County Commissioners named in his Complaint—David M. Unruh, Tim R. Norton, Karl Peterjohn, and Richard Ranzau—signed that county policy into law.

Plaintiff alleges that all the judgments entered in the Sedgwick County District Court, the Kansas Court of Appeals, as well as the United States District Court for the District of Kansas, are void. Plaintiff alleges that the judgments are void based on lack of jurisdiction and "violation of Plaintiff's speedy trial rights." Doc. 1 at 15. Plaintiff alleges that because the Governor is the

"chief political head for the State of Kansas," all acts are being done on the Governor's behalf. *Id.*

Plaintiff alleges that the Assistant District Attorney conspired with Judges Clark and Pilshaw to violate his constitutional rights. Plaintiff alleges that Sheriff Jeff Easter and Secretary of Corrections Joseph Norwood acted on unlawful or void orders to restrain plaintiff and deprive him of his liberty. Plaintiff alleges that in Case Nos. 99-3102-DES, 11-3106-SAC, and 10-3060-RDR, the United States District Court judges entered "void judgments upon the void judgments of conviction" in his state cases. *Id.* at 16.

Plaintiff seeks monetary damages, equitable relief, injunctive relief, and declaratory relief based on his false imprisonment. Plaintiff asks the court to vacate his judgment of conviction and release him from imprisonment.

## II. Legal Standard

### A. Statutory Screening of Prisoner Complaints

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or any portion of it if a complaint raises claims that are legally frivolous or malicious; that fail to state a claim upon which relief may be granted; or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court

liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Also, the court accepts all well-pleaded allegations as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). But, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Although this standard "does not require 'detailed factual allegations,'" it demands more than "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, as the Supreme Court has explained, simply "will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). In short, the court need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 557 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (internal quotation omitted).

The Tenth Circuit has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the pro se plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (citation omitted).

Our Circuit also has held that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500

5

F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must nudge his claims across the line from conceivable to plausible." *Smith*, 561 F.3d at 1098 (internal quotation marks and citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 550 U.S. at 570).

## III. Discussion

### A. Habeas Nature of Claim

In his current Complaint, plaintiff tries to bring habeas claims in a § 1983 lawsuit. To the extent plaintiff seeks relief that would result in immediate or speedier release from prison, he must bring these claims in a petition for a writ of habeas corpus, not under 42 U.S.C. § 1983. *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) ("When a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release, his sole federal remedy is a writ of habeas corpus."). In contrast, a prisoner generally must use § 1983 to challenge the conditions of his confinement. *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 812 (10th Cir. 1997) ("A habeas corpus proceeding attacks the fact or duration of a prisoner's confinement and seeks the remedy of immediate release or a shortened period of confinement. . . . [A] civil rights action . . . attacks the conditions of the prisoner's confinement and requests monetary compensation for such

6

conditions." (quoting *Rhodes v. Hannigan*, 12 F.3d 989, 991 (10th Cir. 1993))). So, to determine whether plaintiff has stated a claim for which relief may be granted, the court considers whether plaintiff's Complaint tries to use § 1983 to challenge the fact or duration of his confinement.

While plaintiff has styled his Complaint as a civil rights action under § 1983, his claims challenge the fact or duration of his confinement. For example, plaintiff asks the court to find "that injunctive relief is warranted to release Plaintiff from the false imprisonment and to prevent the continued civil wrong and injury suffered" and that the court find "declaratory relief is warranted finding that plaintiff has been illegally incarcerated for 23 years and that the judgment of conviction in both cases 95 CR 1859 and 95 CR 1616 are nullities." Doc. 1 at 18; *see also id.* at 19–21 (reiterating requested relief across claims). A finding that plaintiff's prior convictions are nullities—based on judicial misconduct and destruction of evidence—challenges the validity of those convictions. *See Ames v. Oklahoma*, 158 F. App'x 114, 117 (10th Cir. 2005). And, nullifying the state and federal court decisions upholding his convictions necessarily would challenge plaintiff's underlying conviction. Last, to find that Sheriff Jeff Easter and the KDOC Secretary acted on void orders would of course require the court to declare the underlying conviction as void. Tellingly, plaintiff makes no challenge to the conditions of his confinement—only that his confinement itself is void and illegal. Based on this screening review, plaintiff has brought his claims under § 1983 improperly.

Also, after this court denied plaintiff's first petition for a writ of habeas corpus in 2001, plaintiff has filed several pseudo-habeas petitions with our court. Previously, our court has traced the history of plaintiff's first habeas petition:

> That first federal petition was denied on the merits on September 11, 2001. In addition, petitioner filed a Motion for Reconsideration of the denial of his first habeas petition, and that motion was denied on October 5, 2001. He appealed to the Tenth Circuit Court of Appeals,

7

> which denied a certificate of appealability and dismissed the appeal. In his motion for reconsideration, Mr. Loggins sought a stay while he exhausted additional arguments in state court. However, the district court found, and the Tenth Circuit [later] cited its finding, that "any issues petitioner seeks to exhaust are already foreclosed as untimely under 28 U.S.C. § 2244(d)(1), and petitioner cannot possibly show that he exercised due diligence in raising his claims."

*Loggins v. Kansas Dep't of Corr.*, No. 11-3106-SAC, 2011 WL 2471287, at *1 (D. Kan. June 22, 2011) (taking judicial notice of *Loggins v. Hannigan*, Case No. 99-3102-DES (D. Kan. Sept. 11, 2001)). Since his original habeas petition was denied, plaintiff has filed a petition for a writ of mandamus in our court in 2010. *See Loggins v. Kan. Supreme Court*, No. 10-3060-RDR, 2010 WL 1530826, at *1 (D. Kan. Apr. 14, 2010). And, in 2011, plaintiff filed a Motion to Vacate Judgment as Null and Void. *Loggins*, 2011 WL 2471287, at *1. In both cases, our court construed these filings as successive federal habeas corpus petitions. *See Loggins*, 2010 WL 1530826, at *1; *Loggins*, 2011 WL 2471287, at *1. And, in this case, Mr. Loggins appears to seek habeas relief under the guise of a § 1983 claim—*e.g.*, Mr. Loggins argues that he was not present at his arraignment, a claim he made in his 2011 Motion to Vacate Judgment as Null and Void. *Compare* Doc. 1 at 14 *with Loggins*, 2011 WL 2471287, at *1. And so, the court directs plaintiff to address this issue in his Amended Complaint. If plaintiff elects to file an Amended Complaint, he must identify whether he asks for relief besides an order releasing him from confinement. If plaintiff seeks such relief, he must identify it precisely and explicitly.

   **B.** ***Heck* Bar**

Next, plaintiff's claims for damages based on his challenge to his state court convictions and sentences are premature, and thus barred, under the *Heck* rule. In *Heck v. Humphrey*, the United States Supreme Court held that when a state prisoner seeks damages in a § 1983 action, the district court must consider the following:

> whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

512 U.S. 477, 487 (1994). To establish this requirement, the plaintiff must show the conviction or sentence has been overturned, either on appeal, in a collateral proceeding, or by executive order. *Id*. at 486–87. The *Heck* rule thus "'prevent[s] litigants from using a § 1983 action, with its more lenient pleading rules, to challenge their conviction or sentence without complying with the more stringent exhaustion requirements for habeas actions.'" *Johnson v. Pottawatomie Tribal Police Dep't*, 411 F. App'x 195, 198 (10th Cir. 2011) (quoting *Butler v. Compton*, 482 F.3d 1277, 1279 (10th Cir. 2007)).

As discussed, plaintiff's claims here necessarily imply the invalidity of his conviction—*i.e.*, plaintiff claims that state actors took unconstitutional actions to convict him and then spoliated evidence, which led to his unsuccessful appeals and continued imprisonment. Plaintiff has failed to show that his conviction and sentence ever were invalidated. The court thus directs plaintiff to address this issue in his Amended Complaint.

### C.     Immunities

#### 1. Eleventh Amendment Immunity

A claim against state officials for money damages is barred by sovereign immunity. An official-capacity suit is another way of pleading an action against the governmental entity itself. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). "When a suit alleges a claim against a state official in his official capacity, the real party in interest in the case is the state, and the state may raise the defense of sovereign immunity under the Eleventh Amendment." *Callahan v. Poppell*, 471 F.3d 1155, 1158 (10th Cir. 2006) (quotation marks and citation omitted). Sovereign immunity generally bars federal court lawsuits seeking damages against state officials acting in

their official capacity. *Harris v. Owens*, 264 F.3d 1282, 1289 (10th Cir. 2001). It is well established that Congress did not abrogate the states' sovereign immunity when it enacted § 1983. *Quern v. Jordan*, 440 U.S. 332, 338–45 (1979); *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002).

The bar also applies when the entity sued is an arm or instrumentality of a state. *Sturdevant v. Paulsen*, 218 F.3d 1160, 1164 (10th Cir. 2000). When determining whether an entity is an instrumentality or arm of the state for purposes of Eleventh Amendment immunity, the Tenth Circuit has established a two-part inquiry, requiring a court to examine (1) "the degree of autonomy given to the agency, as determined by the characterization of the agency by state law and the extent of guidance and control exercised by the state," and (2) "the extent of financing the agency receives independent of the state treasury and its ability to provide for its own financing." *Duke v. Grady Mun. Sch.*, 127 F.3d 972, 974 (10th Cir. 1997) (citations omitted). "The governmental entity is immune from suit if the money judgment sought is to be satisfied out of the state treasury." *Id.* (quotation marks and citations omitted).

Kansas state law "clearly characterizes the district courts as arms of the state government—part of a unified judicial branch along with the Kansas Supreme Court and Kansas Court of Appeals." *Wilkins v. Skiles*, No. 02-3190-JAR, 2005 WL 627962, at *4 (D. Kan. Mar. 4, 2005). *See generally* Kan. Const. art. 3. The legislature defines "state agency," for purposes of the state workers' compensation fund, as "the state, or any department or agency of the state, but not including . . . the district court with regard to district court officers or employees whose total salary is payable by counties." Kan. Stat. Ann. § 44-575(a). The only court personnel who are not included in the judicial personnel pay system, and are instead paid by the county, are county auditors, coroners, court trustees and personnel in each trustee's office, and personnel

performing services in adult or juvenile detention or correctional facilities. Kan. Stat. Ann. §§ 20–162(a), (b). District court judges are state officials. *Schroeder v. Kochanowski*, 311 F. Supp. 2d 1241, 1256 (D. Kan. 2004); *see also Sigg v. Dist. Court of Allen Cty.*, No. 11-2625-JTM, 2012 WL 941144, at *4 (D. Kan. Mar. 20, 2012) (barring official-capacity claim for money damages against district court judge).

Any official capacity claim against a state official for money damages is barred by sovereign immunity. Also, state officers acting in their official capacity are not considered "persons" against whom a plaintiff can bring a claim for damages under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). In sum, any claim for money damages against state officials in their official capacity is subject to dismissal on sovereign immunity. In at least one instance in plaintiff's Complaint, it is ambiguous whether plaintiff seeks damages against a state official in her official or individual capacity. *See* Doc. 1 at 17–18 ("Said relief be [awarded] in her official-and in her individual capacity. Award Plaintiff $15,000,000 in monetary damages."). So, the court directs plaintiff to resolve this uncertainty if he chooses to file an Amended Complaint.

### 2. Judicial Immunity

Plaintiff's claims against the state and federal judges are subject to dismissal based on judicial immunity. "Personal immunities . . . are immunities derived from common law which attach to certain governmental officials in order that they not be inhibited from 'proper performance of their duties.'" *Russ v. Uppah*, 972 F.2d 300, 302–03 (10th Cir. 1992) (citing *Forrester v. White*, 484 U.S. 219, 223, 225 (1988)). A state judge is absolutely immune from § 1983 liability except when the judge acts "in the clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978) (articulating broad immunity rule that a "judge will not

11

be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority . . . ."); *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994). Only actions taken outside a judge's judicial capacity can deprive the judge of judicial immunity. *Stump*, 435 U.S. at 356–57; *see also Sigg*, 2012 WL 941144, at *4 (explaining that judges are "absolutely immune from civil liability while carrying out their judicial functions," which are "those acts performed by a judge when the parties deal with the judge in her judicial capacity" (citations omitted)). Plaintiff does not suggest that any of the judges he has sued acted outside their judicial capacity—thus, the court directs plaintiff to address this issue in his Amended Complaint.

### 3. Prosecutorial Immunity

Plaintiff's claims against the assistant district attorney are subject to dismissal based on prosecutorial immunity. Prosecutors are absolutely immune from liability for damages in actions asserted against them for actions taken "in initiating a prosecution and in presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976). Plaintiff's claims about his criminal case fall squarely within the prosecutorial function. Plaintiff may amend his Complaint to address this prosecutorial immunity issue.

### 4. Quai-Judicial Immunity

In his Amended Complaint, plaintiff must also address deficiencies in his claims against Sheriff Jeff Easter and interim KDOC Secretary Roger Werholtz based on quasi-judicial immunity. "Officials who act pursuant to a 'facially valid court order' enjoy quasi-judicial immunity from suit under § 1983." *Callaway v. Werholtz*, No. 12-2527-EFM, 2013 WL 2297139, at *4 (D. Kan. May 24, 2013) (citing *Turney v. O'Toole*, 898 F.2d 1470, 1472 (10th

12

Cir. 1990) (holding that state officials were absolutely immune from § 1983 liability for confining the plaintiff in a state hospital pursuant to a judicial order)).

D. **State Law & Criminal Claims**

Plaintiff's Complaint also alleges that Judge Pilshaw and Judge Owens violated section 10 of the Kansas Constitution Bill of Rights. Doc. 1 at 12 (Count I); *id.* at 14 (Count IV). Section 1983 is not a vehicle to vindicate a state law violation. *See D.L. v. Unified Sch. Dist. No. 497*, 596 F.3d 768, 776 (10th Cir. 2010) ("[Section] 1983 affords a remedy for violations of federal law and does not provide a basis for redressing violations of state law." (quotations omitted)).

Plaintiff's Complaint also asks the court to fine or imprison, for up to 20 years, several defendants for obstructing justice under 18 U.S.C. §§ 1512 and 1519, and the Sarbanes-Oxley Act. Doc. 1 at 18, 20. Title 18 U.S.C. §§ 1512 and 1519 are criminal statutes; they do not create a private right of action. *Shahin v. Darling*, 606 F. Supp. 2d 525, 538 (D. Del. 2009); *Salem v. Arakawa*, No. CV 15-00384 LEK-KSC, 2016 WL 1043050, at *6 (D. Haw. Mar. 15, 2016). And, plaintiff neither explains which provision of the Sarbanes-Oxley Act that defendants have violated nor provides any authority suggesting that this Act permits a private right of action. *See, e.g.*, *Srebnik v. Dean*, No. CIVA 05CV01086 WYDMJ, 2006 WL 2790408, at *5 (D. Colo. Sept. 26, 2006) (dismissing claims under §§ 302, 402, and 906 of the Sarbanes-Oxley Act because the court would not infer a private right of action). The court thus directs plaintiff to address these deficiencies in his Amended Complaint.

## IV. Motions

### A. Motion for Preliminary Injunction/TRO & Motion for Hearing (Docs. 6, 13)

Plaintiff has filed a motion for a temporary restraining order ("TRO") and preliminary injunction, seeking his release from prison pending resolution of this case. Doc. 6. Plaintiff argues that he is suffering irreparable harm by being illegally incarcerated. Plaintiff also seeks a hearing on his motion. Doc. 13.

TROs and preliminary injunctions are different equitable remedies, but they both require plaintiff to establish that (1) he will suffer irreparable injury absent injunctive relief; (2) the threatened injury outweighs the harm the proposed injunction may cause the opposing parties; (3) the injunction would not be adverse to the public interest; and (4) plaintiff is substantially likely to prevail on the merits. *Adrian v. Westar Energy, Inc.*, No. 11-1265-KHV, 2011 WL 6026148, at *3 (D. Kan. 2011) (citations omitted). And, both remedies are the exception, not the rule. *Id.* (TRO "is an emergency remedy, which is reserved for exceptional circumstances and lasts only until the Court can hear arguments or evidence regarding the controversy"); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief"). Last, a mandatory preliminary injunction, such as the one sought by plaintiff, which requires the non-moving party to take affirmative action—*i.e.*, releasing plaintiff from prison—is disfavored and therefore requires the moving party to make a heightened showing of the four factors above. *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010).

The court finds that plaintiff has not met his burden to make a heightened showing that entry of a TRO or preliminary injunction is warranted. Plaintiff has not demonstrated a likelihood of success on the merits such that his right to relief is clear and unequivocal. *See, e.g.*,

*Carbajal v. Warner*, 561 F. App'x 759, 762 (10th Cir. 2014) (affirming district court's denial of prisoner's request for preliminary injunction because "to the extent [he] is seeking to be released from state confinement in this § 1983 action, he has no likelihood of success on the merits because his claim is barred by the [*Heck*] rule[.]"). Plaintiff's Complaint has not survived screening, and in fact, the court is directing him to file an Amended Complaint. The court thus denies plaintiff's request for a TRO/preliminary injunction. Doc. 6. Likewise, the court denies plaintiff's request for a hearing. Doc. 13.

      **B.**      **Motion to Change Venue (Doc. 4) & Motions for Consolidate Cases (Docs. 14, 16, 17)**

Next, plaintiff seeks to consolidate the current case with *Loggins v. Norwood*, No. 18-3016-DDC (D. Kan. Mar. 6, 2019), which was reassigned from Judge Sam A. Crow to the undersigned on March 19, 2019. Plaintiff filed a similar motion to consolidate Judge Crow when presided over the case. Motion to Consolidate, *Loggins v. Norwood*, No. 18-3016-SAC (D. Kan. Nov. 6, 2018), ECF No. 16. Judge Crow denied the motion for consolidation without prejudice, finding the following:

> Rule 42 provides that the Court may order consolidation if actions involve a common question of law or fact. Fed. R. Civ. P. 42(a). The decision whether to consolidate such actions is left to the sound discretion of the trial court. *Shump v. Balka*, 574 F.2d 1341, 1344 (10th Cir. 1978).
>
> The Court finds that consolidation is not warranted at this time. Case No. 18-3254 appears to deal with Plaintiff's underlying criminal case, while the instant case deals with Plaintiff's allegation that he was labeled as a sex offender and denied association with minor family members pursuant to a new KDOC policy without due process. The Court has ordered a *Martinez* report in the instant case, and the case has not survived screening. The Court finds that consolidation is premature at this time. . . . The Court denies the

> motion to consolidate without prejudice to Plaintiff refiling the
> motion if this case survives screening.

Order at 1–2, *Loggins v. Norwood*, No. 18-3016-SAC (D. Kan. Nov. 14, 2018), ECF No. 19.

The court agrees with Judge Crow, and so, it denies plaintiff's Motions to Consolidate Cases (Docs. 14, 16, 17) here for substantially the same reasons. Likewise, this court denies plaintiff's Motion to Change Venue (Doc. 4) from Topeka, Kansas, to Wichita, Kansas, as premature. Plaintiff may refile these motions if his case survives screening.

### C. Motion for Leave to Amend Complaint

Last, plaintiff asks for the court's leave to amend his Complaint. Doc. 18. Specifically, he seeks to add an additional claim seeking punitive damages from Sedgwick County District Court Judge James Fleetwood. *Id.*

Plaintiff is entitled to amend his Complaint. *See* Fed. R. Civ. P. 15(a)(1). And, pro se plaintiffs generally should be given a reasonable opportunity to remedy their pleading defects. *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990). Plaintiff seeks to add one claim to his original Complaint, but—based on the court's screening of plaintiff's Complaint—the court also directs plaintiff, when plaintiff files his Amended Complaint, to address the many issues raised in this Order. And, if plaintiff does not file an Amended Complaint before May 1, 2019, this matter will be decided based upon the current Complaint. **If plaintiff fails to file a timely Amended Complaint, the court may dismiss this case without providing additional notice.**

### V. Conclusion

The court denies plaintiff's Motion to Change Venue (Doc. 4); Motions to Consolidate Cases (Doc. 14, 16, 17); Motion for TRO/Preliminary Injunction (Doc. 6); and Motion for Hearing (Doc. 13). The court grants plaintiff's Motion for Leave to Amend his Complaint (Doc. 18). Plaintiff's Amended Complaint must address the deficiencies identified by the court in this

Order. If plaintiff does not file an Amended Complaint by the time proscribed by the court, this matter will be decided based on the current Complaint.

**IT IS THEREFORE ORDERED BY THE COURT** that plaintiff's Motion to Change Venue (Doc. 4) and Motions to Consolidate Cases (Docs. 14, 16, 17) are denied without prejudice.

**IT IS FURTHER ORDERED** that plaintiff's motion for a TRO/Preliminary Injunction (Doc. 6) and Motion for Hearing (Doc. 13) are denied.

**IT IS FURTHER ORDERED** that plaintiff's Motion for Leave to Amend Complaint (Doc. 18) is granted.

**IT IS FURTHER ORDERED** that plaintiff is granted until May 1, 2019, to file a complete and proper Amended Complaint addressing the deficiencies identified by the court in this Order.

**Dated this 27th day of March, 2019, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**